**Eldorado Jewelry Company, Appellee, v. Christian J. Werner et al., Appellants.**

**Gen. No. 15,048.**

CONTRACTS—*when fraud defense to action upon, at law.* A contract for the purchase of merchandise will not be enforced against the purchaser if he has been induced to enter into such contract by fraud and misrepresentation.

Action commenced before justice of the peace. Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed with finding of facts. Opinion filed June 3, 1910.

**Statement by the Court.** This is a suit brought by the Elgin Jewelry Company against Christian J. Werner and Julius M. Ranney, retail merchants in Chicago, for damages

for breach of an alleged contract for the sale of jewelry. A trial was had before the court without a jury, and the plaintiff had judgment for $167.20.

It appears from the record that on December 3, 1903, an agent of the plaintiff, by the name of McCarthy, called upon the defendants in Chicago, and represented himself as a salesman for the Elgin Jewelry Company, but that he was really doing business for the Elgin National Watch Co. Defendant, Werner, informed him he did not wish to buy any goods. McCarthy then said, "Won't you buy goods when you can deal with such a concern as the Elgin National Watch Co. ?" In the same conversation McCarthy, in response to a query on the part of the defendant, how he could sell the goods, samples of which he exhibited, so cheaply, said that "formerly we threw away the scraps after making the movements of the watches; now we utilize them in making jewelry of them. What formerly went to waste, we now use, and that is why we can make and sell jewelry at less than half price." McCarthy further said that the president of the Elgin National Watch Co. was president of the Elgin Jewelry Co. and that the latter company was under the same management as the Elgin National Watch Co. The defendant, Werner, then responded that if that was the case and everything was as he represented, and he was dealing with the Elgin National Watch Co., as McCarthy represented, he would give an order. McCarthy asked defendant, "Have you ever been through the Elgin National Watch Company's plant ?" To this defendant said, "No." McCarthy then said, "I would invite you to come out to our plant and examine it, and I will introduce you to the president of the company, who is a very pleasant man and you will have the finest reception you ever had in your life." The defendant then asked, "Would that be the president of the Elgin Watch Company ?" and McCarthy said, "Yes, the finest man you ever met."

This conversation was overheard by Frank Newman, a clerk in the employ of the defendants who testified, "I was standing at the show case at the time McCarthy came. He said, 'I am from the Elgin Jewelry Co., which is the same

as the Elgin National Watch Co. and has the same president and run under the same firm name, the Elgin National Watch Company. They are manufacturing jewelry from the scraps they used to throw away from the works of the watches.' That is about all that I heard. I went away, he was showing samples of jewelry."

The defendant then gave an order in substance as follows:

Elgin Jewelry Company, Manufacturing Jewelers,
Elgin, Ill.

Free with this order; gold filled guaranteed watch; trade certificates representing face value of $2,500; 1000 circulars; cash $500 to merchant showing best business. Total amount of order $197.60.

Provision that if vendee will sell no goods at less profit than is usually charged on jewelry then vendor guarantees he will make 33⅓ per cent. per annum provided he uses ordinary diligence.

Succeeding 4 pages specifications of order, etc.

Warranty to replace in 5 years goods wearing unsatisfactorily.

Statement that vendee has read all foregoing 6 pages and it is satisfactory to be delivered via American Express Co.

On December 8, 1903, the plaintiff delivered the jewelry and watch to the U. S. Express Co. at Iowa City, Iowa, and the showcase to the Chicago, Milwaukee & St. Paul R. R. Co. at Elgin, December 5, 1903. The jewelry arrived in Chicago December 19, 1903, or shortly before that date. On December 19, 1903, the defendants wrote the plaintiff as follows: "We regret to have to return the jewelry sent us as neither the case nor the advertising matter has come, and even should they now come, we would, at this late hour before Christmas, not have time to properly attend to the matter," etc.

On January 11, 1904, defendants wrote the plaintiff that they had just received notice from the Chicago, Milwaukee & St. Paul Railroad that they had a case for them shipped by the plaintiff, and notified the plaintiff that they would not accept the case.

This action was commenced by the plaintiff against the defendants March 14, 1904.

It was not until this time that the defendants discovered that they had not been dealing with the Elgin National Watch Company, as they supposed, and some time thereafter they learned the following facts shown by the record.

The Elgin Jewelry Co. and the Elgin National Watch Co. are not and have never been the same companies or in any way connected with each other, or affiliated with each other. The Elgin Jewelry Co. never had a factory at Elgin, Illinois. It occupied a small back room in an office building in Elgin, in charge of a young lady. No stock was kept there and no business was done there except of a routine and unimportant character. The presidents of the companies were never the same man. The Elgin Jewelry. Co. was organized in 1903, by Theodore O. Loveland, James L. Records and Charles W. Harrison as commissioners.

A bill of complaint was filed in Circuit Court of Kane county, Illinois, by the Elgin National Watch Company against the Elgin Jewelry Company setting forth the incorporation of complainant, change of name from National Watch Co. to Elgin National Watch Co., location at Elgin in 1865 and the continuous manufacture by complainant at Elgin of watch movements; the use thereon of the name "Elgin" as a trade mark; favorable reputation acquired by the product of the Elgin National Watch Co., under the name "Elgin" and the identification of its product and business by that name so that the name "Elgin" as applied to watches, jewelry or similar articles has acquired in the trade and with the public a well defined meaning indicative of the Elgin National Watch Co., its product and business. That Williard F. Main and Milbert F. Price, co-partners as Williard F. Main & Co., prior to 1902, manufactured jewelry at Iowa City, Ia., and under the name of Puritan Manufacturing Co. and Equitable Manufacturing Co. until December, 1902, sold at wholesale jewelry, watches, watch movements, clocks, time pieces, silverware and similar articles, with jobbing and wholesale offices at Iowa City, Ia., and Chicago, Ill.; that about December-

ber, 1902, said Main & Price sold the wholesale business conducted by them under the name Equitable Manufacturing Co. to Theodore O. Loveland and James L. Records; that soon thereafter Charles W. Harrison became interested in the business and that these three persons conducted the business so purchased until some time in February, 1903, under the name Equitable Manufacturing Co.; that at that time these persons conceived the fraudulent scheme of using the name Elgin Jewelry Co., for the purpose of selling jewelry, clocks, watches, watch movements and similar articles and thereupon began the use of that name; that the word "Elgin" in the said name was selected solely because of the high reputation and standing of the Elgin National Watch Co. and its product, and because of the close association and identification of the word "Elgin" with the Elgin National Watch Co. and the use of the word "Elgin" by the public to designate the Elgin National Watch Co. and its product and the fact that the association of the word "Elgin" had become in the minds of buyers and the public extended from watch movements to watches, clocks, time pieces and jewelry in general; that thereupon traveling salesmen and representatives of the said Loveland, Records and Harrison were instructed and advised by them to use and employ the said name Elgin Jewelry Company in the exploitation and sale of watch movements, watches, clocks, time pieces, jewelry and similar articles, and to state to and assure buyers that the Elgin Jewelry Company and the Elgin National Watch Co. were the same establishment and were identical and in order to give apparent color and justification of said fraudulent scheme and plan and to further deceive both retailers who should purchase, and the public and buyers generally, the said Loveland, Records and Harrison on the 25th day of February, 1903, applied to the Secretary of State of Illinois for a license to form a corporation under the name Elgin Jewelry Co.; that thereupon the said persons proceeded to open alleged books of subscription; that after taking stock subscriptions and filing a report, the Secretary of State issued a certificate of incorporation under the name Elgin Jewelry Co., which certificate,

however, was not recorded with the Recorder of Deeds of Kane county, where the principal office of the company was stated to be located, but that the said articles of incorporation were not recorded with the Recorder of Deeds of Kane county, Illinois, until September 6, 1904, and that said Records, Loveland and Harrison refrained from filing said certificate deliberately and purposely; and that until the said certificate was filed the Elgin Jewelry Co. was not a corporation suable in the courts of the State of Illinois by the Elgin National Watch Co.

The bill avers that Loveland, Records and Harrison were each and all residents of the city of Iowa City, Iowa, and did not and never have transacted any business in the city of Elgin; that neither they nor the said pretended corporation, Elgin Jewelry Co., ever had any factory, works or business in Elgin; that a sham place of business was maintained consisting of two small rooms in an office building in charge of a young woman who received mail and transmitted it without attention to Iowa City, and that all business obtained under the name Elgin Jewelry Co. was and is transacted and attended to at or from the city of Iowa City, Ia., or Chicago, Ill., and that said pretended corporation, the assumption of the name Elgin Jewelry Co. and the establishment and maintenance of the pretended offices at Elgin are all merely shams devised, executed and maintained for the purpose of obtaining and maintaining alleged colorable right to the use of the name "Elgin" in the said corporate style and in this way to deceive the public and profit and trade upon the reputation and business of the Elgin National Watch Co.

That the business of Loveland, Records and Harrison consisted in selling watches, watch movements, jewelry, clocks and similar articles, and was and now is conducted actively by the said Loveland, Records and Harrison at Iowa City, Iowa, and Chicago, Illinois, and is carried on by means of traveling salesmen who visit storekeepers throughout the United States and who were and now are by the said Loveland, Records and Harrison instructed to represent themselves as the agents of the Elgin National Watch Co. as sell-

ing Elgin watches, as being authorized and empowered by the Elgin National Watch Co. to grant exclusive agencies for the sale of Elgin watches and that the Elgin National Watch Co. has lately gone into the manufacturing of jewelry, watches, clocks, time pieces as well as watch movements, and that the Elgin Jewelry Co. is one and the same institution as the Elgin National Watch Co.; and that the product of the Elgin Jewelry Co., which is in reality made in the city of Iowa City, Iowa, or Chicago, Illinois, or elsewhere outside of the city of Elgin, is the product of the Elgin National Watch Co. and is entitled to all the faith and credit which attaches to that company's manufacture; that in furtherance of said fraudulent scheme said Loveland, Records and Harrison prepared letter heads containing representations of a watch bearing conspicuously the name "Elgin" on the dial. Said letter heads also exhibit the words "Elgin Jewelry Co., incorporated, Elgin, Illinois; wholesale jewelers and jobbers in watches, jewelry, clocks, etc., importers of diamonds, 1010 Atwood Building, Chicago." And said salesmen, agents and representatives of the said Loveland, Records and Harrison were and are enabled to and do represent themselves as the agents and representatives of the Elgin National Watch Co., and that said pretended corporation Elgin Jewelry Co. is the Elgin National Watch Co. and are enabled to do so by reason of the use of the name "Elgin" and the false and pretended address and place of business as at Elgin, Illinois, all of which representations are untrue. Said entire scheme in its adoption, development and actual employment was and is with full knowledge on the part of the said Loveland, Records and Harrison and each of them, of the aforesaid well established reputation of the Elgin National Watch Co. and the identification of its business and product by and with the name "Elgin" and the identification in the mind of the public of watch movements, watches, clocks, time pieces and jewelry offered for sale or sold under or with the name "Elgin" in any way as the product of the Elgin National Watch Co., and the universal association in the mind of the public of the word "Elgin" with the Elgin National Watch

Co., and was devised by the said Loveland, Records and Harrison, and each of them for the purpose of deceiving and gulling the public and passing off watches, watch movements, clocks, time pieces and jewelry not manufactured by the Elgin National Watch Co., as and for its product, and to enable the said Elgin Jewelry Co. to personate the Elgin National Watch Co., and as a result of this scheme and these methods and the use of the word "Elgin" they were and now are enabled to and do deceive buyers, customers and the public, and are enabled to and do sell and now are selling large quantities of watches, watch movements, clocks, time pieces and jewelry not made by the Elgin National Watch Co. as and for the manufacture of that company whereby its reputation and trade are injured, and the said Loveland, Records and Harrison are enabled to profit greatly at the expense of the Elgin National Watch Co.'s reputation, and are enabled to and do sell large quantities of watches, watch movements, clocks, time pieces, and jewelry which but for the false and fraudulent use of the word "Elgin" as aforesaid, would not be sold or disposed of and that the products so sold by the said Loveland, Records and Harrison are of low grade and quality.

The bill avers the filing of a bill in equity in the United States Circuit Court for the Cedar Rapids Division of the Northern District of Iowa on the 23rd day of February, 1904, by the Elgin National Watch Co., against Theodore O. Loveland, James L. Records and Charles W. Harrison, in which the Elgin National Watch Co. set out the facts and circumstances herein alleged and the fraudulent method of said Loveland, Records and Harrison, and their false and deceptive use of the name "Elgin;" their sham office at Elgin, and their systematic and fraudulent personation of the Elgin National Watch Co. and in said bill prayed for an injunction enjoining and restraining the defendants from the use of the word "Elgin" or any like word in connection with the manufacture or exploitation of watches, watch movements, time pieces, clocks or jewelry or any name containing the

word "Elgin" as a business name or style and from persona-
ting the Elgin National Watch Company.

That thereafter on April 4, 1904, the defendants entered
appearance; that on May 9, 1904, a motion for preliminary
injunction was made by the Elgin National Watch Co. based
upon verified bill of complaint, affidavits and exhibits. Said
motion was argued and that thereafter a general and special
demurrer was filed which was also argued, and that after due
consideration on August, 25, 1904, the court overruled the
demurrer and granted an injunction in substantially the
terms prayed, and enjoining the defendants from using or
employing the word "Elgin" or any like word in connection
with the manufacture, exploitation or sale of watches, watch
movements, clocks, time pieces or jewelry, or in any way,
unless upon and in connection with the genuine products and
manufacture of complainant, and from using the name
"Elgin Jewelry Company," or any name of which the word
"Elgin," is a part, as the business name or style under which
to sell such goods, and from representing or stating in any
way that said defendants or said Elgin Jewelry Company are
complainant, the same as complainant, or connected with or
authorized in any way by complainant. The court refused
to enjoin the completion of the pretended corporate organiza-
tion of the Elgin Jewelry Co. by the filing of its charter in
the office of the Recorder of Deeds of Kane county, and
thereafter on the 6th day of September, 1904, the said Love-
land, Records and Harrison filed, or caused to be filed in
the office of the Recorder of Deeds of Kane county, the
certificate of incorporation of said pretended Elgin Jewelry
Co., and thereupon and not until then, the Elgin Jewelry
Co. became a corporation which could be sued by the Elgin
National Watch Co.

The Elgin Jewelry Co. is continuing the business and since
the date of filing the charter has continued the business of
said Loveland, Records and Harrison, who are also its
officers, directors and agents and who own all but one share of
its capital stock and who are actually conducting its busi-
ness and are using the name "Elgin" as a sham and means

of stealing the trade and good will of the Elgin National
Watch Co. and of selling their products and articles as of
the manufacture of the Elgin National Watch Co. and de-
ceiving and defrauding the public. That the Elgin Jewelry
Co. is collecting money on contracts obtained by said Love-
land, Records and Harrison through their fraudulent person-
ation of the Elgin National Watch Co. before the filing of
the articles of incorporation of the Elgin Jewelry Co., and
since the filing of the said articles, the Elgin Jewelry Co.,
by agents and salesmen, has been and now is with full knowl-
edge of the rights of the Elgin National Watch Co., and with
the deliberate fraudulent purpose and intention of person-
ating that company and selling the product of the Elgin
Jewelry Co., as and for the product of the Elgin National
Watch Co., represented and now are representing themselves
as the agents of the Elgin National Watch Co., as selling
Elgin watches and being authorized and empowered by the
Elgin National Watch Co. to grant exclusive agencies for
the sale of Elgin watches; that the Elgin National Watch.
Co. has recently gone into the manufacture of jewelry,
watches, clocks and time pieces as well as watch movements;
that the Elgin Jewelry Co. is one and the same institution
as the Elgin National Watch Co., and that the product of
the Elgin Jewelry Co., which is made in reality at Iowa
City, Ia., or elsewhere outside of the city of Elgin, is the
product of the Elgin National Watch Co. and is entitled to
all the faith and credit which attaches to that company's
manufacture, and that said salesmen and representatives are
enabled to and do represent themselves as the agents and
representatives of the Elgin National Watch Co., and that
the Elgin Jewelry Co. is the Elgin National Watch Co., and
are enabled to do so by reason of the name "Elgin" and the
false and pretended address and place of business at Elgin,
all of which representations are untrue. As the result large
quantities of watches, watch movements, time pieces and
jewelry, not manufactured by the Elgin National Watch
Co. or in any way authorized by it, are by the Elgin Jewelry
Co. sold and palmed off on the public as of the Elgin Nation-

al Watch Company's manufacture; and that all of the fraudulent practices of the said Loveland, Records and Harrison have been continued and carried on by the Elgin Jewelry Co. without change.

On November 21, 1904, the bill of complaint was taken as confessed and the following decree was entered thereon:

"This cause coming on to be heard upon the verified bill of complaint herein, due service of process having been had on the defendant, and the defendant in open court having confessed each and all of the allegations of said bill of complaint, the court finds:

That it has jurisdiction both of the subject matter of this cause and of the parties hereto; that the allegations of the bill of complaint are true; that defendant by its conduct as set out in said bill of complaint has been guilty of unfair competition with complainant, and that complainant is entitled to the relief prayed.

It is thereupon ordered, adjudged and decreed that said defendant Elgin Jewelry Company, its officers, agents, servants, salesmen, clerks and employes be, and they each and all hereby are perpetually enjoined and restrained from using or employing the word 'Elgin' or any like word in connection with the manufacture, exploitation or sale of watches, watch movements, clocks, time pieces or jewelry or in any way unless upon and in connection with the genuine product and manufacture of complainant, and from using the name 'Elgin Jewelry Company,' or any name of which the word 'Elgin' is a part, as a business name or style, and from representing or stating in any way that said Elgin Jewelry Co. is complainant, the same as complainant, or connected with or authorized in any way by complainant; that the Elgin Jewelry Company or any other than complainant, is the manufacturer of the Elgin watch; that said Elgin Jewelry Company under said name or otherwise, has a business establishment or manufacture or does business at Elgin; and further, from doing any act or thing, or using any name or names whatsoever calculated to induce the belief that said Elgin Jewelry Co. is complainant, or that any product offered for sale or sold by it is authorized or manufactured by or in any way connected with complainant, or its factory; and that writs of injunction issue to this effect; that com-

plainant is entitled to recover of and from said defendant the profits realized by it by reason of its wrongful conduct complained of in the bill of complainant, and also all damages which have resulted to complainant by reason of defendant's unfair competition. Complainant having elected to waive an accounting of damages and profits, the court finds the sum of one dollar in lieu thereof."

In the latter part of 1904, the name of the Elgin Jewelry Company was changed to Eldorado Jewelry Company, and in 1908 the proceedings and papers in this case were amended accordingly.

CHARLES A. WILLIAMS, for appellants.

FLYNN & LYON, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The record contains no contradiction of the testimony of Werner and Newman as to the representations made by the plaintiff, through McCarthy, at the time the defendants made the order for the goods upon which this action is brought. The evidence shows that the representations made by McCarthy were false; that they were designed to and did deceive the defendants, and through such deception the defendants were led to believe that they were dealing with the Elgin National Watch Company. They believed, and had reason to believe, they were offered and were purchasing goods manufactured by the latter company. The evidence convinces us that the plaintiff intended to deceive the defendants as to the character of the goods, and also as to the corporation the defendants were dealing with. The representations made to the defendant were a part of the fraudulent scheme formed by the officers, manager and agents of the plaintiff to deceive the public and the purchasers of its goods, not only as to the character and value of the goods, but as to the institution offering the goods to the trade. The false representations made were material, in our opinion, and the fraud practiced vitiated and renders voidable the alleged contract of purchase. Upon the facts shown by the evidence

the law will not afford the plaintiff a remedy. National Bank v. Hall, 101 U. S. 43; Boston Ice Co. v. Potter, 123 Mass. 28; Arkansas Smelting Co. v. Belden Co., 127 U. S. 379; Mueller v. North Western University, 195 Ill. 236; Elgin National Watch Co. v. Loveland et al., 132 Fed. Rep. 41.

The evidence shows that the goods shipped by the plaintiff, and rejected by the defendants, were different from the samples exhibited by McCarthy, and did not correspond with them in any particular. The defendant Werner opened the package, while the express company's messenger waited, and examined the goods. He testified that they did not correspond with the samples exhibited to him in any particular. His evidence on this point is uncontradicted. The defendants, therefore, rightfully rejected the goods.

It appears without dispute that the goods, by the terms of the contract, were to be shipped by the American Express Company. Delivery to the United States Express Company was, therefore, not a delivery to the defendants, until the goods reached them, and they were then rejected by the defendants as above stated. The title never passed to the defendants.

The judgment is reversed with a finding of fact.

*Reversed with finding of fact.*